145574 James Vogel v. E. D. Bullard Company Arguments not to exceed 15 minutes per side Mr. Glennon for appellant Good afternoon your honors, counsel May it please the court I have 13 minutes with 2 minutes reserved for rebuttal I have 15 total minutes to try to persuade the court that Mr. Vogel deserves a jury trial on his claims which were dismissed by the Can you keep your voice up? Yes I'm sorry, thank you your honor I have 15 total minutes to try to make the point that Mr. Vogel deserves a jury trial on his claims I say respectfully but regrettably that this case to me shows as a 35 year practitioner the increasing difficulty of an employee bringing employment law claims and surviving summary judgment and getting a jury trial This is a case which is about many facts many disputed facts Well, the bottom line is it's about the fact that this was an at will employee and we're applying the law of the jurisdiction to that, right? Judge, there are 2 responses to that We don't believe that he was an at will employee because we believe that the duration based representations to him of which there are many show a longer term relationship that was established Obviously the rule, the general rule Nothing in writing Well, there are some written indications your honor and there are some emails that talk about 2 year commitments of support guidance 6 to 12 months of time to get to know the job get to know the people Are there any cases that say that those types of references to time periods constitute a contract for a fixed guaranteed term? I don't think I'd go that firmly, your honor but there are cases in Kentucky Carlosi, Shaw that do talk about that being a question of fact for the jury where there are duration based representations In this case, the contract the district court judge found that the December 30, 2010 offer letter was an enforceable contract as to the signing bonus In this You should finish answering her question before I pose my question Oh, thank you But he then found that the other components of that enforceable agreement didn't present issues for the trier of fact No, he didn't find that those other terms weren't enforceable He found that they did not constitute a promise of just cause employment for a minimum of 2 years Not with respect to those items I don't believe, your honor I think that he found that because the agreement did not have a specific defined term that then it was an at-will employment whereby other cases, Carlosi, Shaw and others do talk about that that that can establish a duration of the contract What can establish a duration? That specific duration based representations and we have at least these that talk about 2 or more years of employment Then you get back to my first question which is are there cases that say that these types of durational references like for the next 2 years I'm going to be trying to give you all the support I can before I retire or other things about employment terms that vest after 6 months or for a year or so Are there any cases that say that that establishes a durational term for a contract of employment? Yes, I believe that Carlosi does and at least I believe that what it does is present questions of fact for a jury to decide We have at least these 5 durational of 2 years or more first I will make sure this is a guarantee They had promised from the president of the company to Mr. Vogel before he moved and by the way the company promised Mr. Vogel to get past his concerns about giving up a 25 year successful career and relocating to Kentucky What exactly language is it that you are relying on? Please Mr. Vogel was promised in writing 2 years of support in any way that that it could be given to him in any way that Mr. Vogel Read me the language that says that please from the record Yes, that is in an email note from Mr. Miller to Mr. Vogel I believe it's dated January 2, 2011 before he gave his notice What does it say precisely? Just what I said, your honor One of my primary commitments for the next 2 years will be to join with Eric to support you in every way I can and in any way you need Yes And counsel you said that he deserves to get to the jury and the jury should consider whether or not these various representations constituted a contract but isn't the existence or non-existence of a contract a question of law for the court to determine? Well initially except if there is a dispute as to what the term of the contract might be and what those terms including the duration may be and that's where Carlozzi and Shaw come in under Kentucky law So those promises of support or commitments to support him during a particular time and there were a number of those in there Those assume that goes to the commitment of the company to support him rather than defining the a fixed term of employment because the offer letter didn't say in there that we're here by promising you employment for a term of X years, did it? No, it did not It was silent on that And both of those parties negotiating parties were sophisticated contractors, if you will Mr. Vogel could have demanded a fixed term, couldn't he? Well, what was offered to him was not discussed in terms of a fixed term but what was discussed was a longer term relationship and that's where again these cases come in It's not just the two years of support There is a This is a He was induced by a financially lucrative position which kicked in at the end of the second year with respect to long term incentive compensation He was told that that the president would approach the board and make sure that he got that after two years There's also as I mentioned a reference that I will from Mr. Pash to Mr. Vogel that I will make sure that you are debt free in a few years These are all part of the record and they're not just But there But case law doesn't support that statements like I'll make sure that you're debt free after a few years and you know I'll make sure that you get this after two years Case law doesn't support that that's a promise that you're going to employ that person for two or three years No but it may be when somebody is known that they are going to be giving up a 25 year successful career and they are being told that they could count on brutal honesty transparency openness and that nothing would be sugar coated or hid from him and when we have the litany of matters that were hidden from him But that's not actionable There are no cases that say that those kinds of cases say that yeah if you want to be sure then you get a contract that says that you're going to be employed for however many of your years except for just cause or guarantee and you a lot of people leave you know a job and say okay I want to be guaranteed my salary for two years I'm not leaving unless I get that Actually I believe Carlosi does touch on that when somebody does rely upon an indication that there are there are some payments that are staggered in the future future payments and the person relocates to Kentucky Okay what was the promise in that case? The promise was well just it was employment It was a contract case as opposed to a promissory estoppel case Although I think that the promises that Mr. Vogel has brought forward here in his promissory estoppel claim fit whether they are contract or whether they could be in the misrepresentation It all depends on whether things worked out All of these ideas that we hope everything will be well in a year two three presupposes that the employment situation between this man and his wife was a good relationship and didn't work out in a good relationship I mean isn't that the background of this? Judge Merritt when you're guaranteed six to twelve months to get to know the business before you are allowed to make any changes Where is that? Where was that? Can you tell me where you're seeking to posit as terms of employment haven't they pretty much characterized those as things that are incident to sales or puffing in the sales marketplace? Judge the last part first I don't believe that when because of the concern expressed about giving up a successful career relocating coming to an unknown place and company and you're guaranteed That was his choice I don't think that it's a bad bet on his part 26 years and he decided he wanted to go somewhere else we don't know what motivated him to do that but he goes and talks to his  and he says I'm not in debt anymore I foresee only positive outcomes this wasn't a matter of gee you're taking a chance here and this is again a situation where they know what it is that he's giving up and this is five months in the job before he was fired without a warning without an evaluation I'm not happy he was asked he was asked are you happy he said no I'm very unhappy with the head man I don't think so judge I don't think that that's quite how it was what did he say I think it was more in response to with your position and what you're doing here and I think it's more along the lines of given that it doesn't seem that I'm needed here or wanted here because he was promised the global authorities of the position which he never had he was promised lucrative compensation which he never had Mr. Miller promised him and I think a portion of it was read earlier all the support you need in any way you want it in any way I can give it he was also promised in the offer letter what does that mean it means the world with a whitewashed fence it means all the money you want what does that mean well in terms of the job and transition into the job and understanding at time and he was we've got a couple of 6-12 month references in the record where he was promised 6-12 months to get to know the position and the people before he would be allowed to make any changes and then later on he's criticized for not having completed any project on his own isn't Mr. Vogel's position undermined in part by the fact that he was well aware at the outset that there was a particularly high turnover at this company in a number of positions and he himself apparently wanted to make the switch because he didn't know the degree of the turnover and the reasons for it. He also If he knew there was a high turnover how can you say he wasn't put on notice of the degree? He did not know of the high turnover he asked about if there were any issues or problems and was not told nobody lied to him right? I mean he says he didn't ask particular questions about that. He didn't he could have asked the people he could have asked his predecessor he could have asked anybody. He was told that his predecessor had left by mutual agreement because she was not a good fit he did not know that she was fired nor did he know that she was the fifth vice president. Are you saying that that's the employer's obligation to tell a prospective employee? I think when an employer promises what it promised to him he had a right to rely on it and when there was nondisclosure of anything negative and that's what they admitted that they told Vogel nothing about anything negative about the company only things positive. And where is the law to support this? Because this is there any law to support this? That there's an obligation to say look when you say somebody left by mutual agreement it's very clear that it didn't work out. So you get on the phone and you try to call some of these people and find out what it's really like to work there. By no means did he get any indication that the problem was as bad as it was as far as turnover or the underlying reasons which the rest of the record reflects. Okay so are you saying an employer has to say to the employee look this is a really hard place to work. I am a rotten no good whatever. I don't get along with people and I'm   work with you. You're really taking a risk if you come to work here but we'd love to have you. I think your honor when they promise brutal honesty openness nothing would be sugar coated. Well he got fired he did not get brutal honesty. He got nothing of a negative nature. What is the degree of diligence required in this situation by Mr. Vogel? In an era perhaps 20 years ago there might not have been as much transparency people may not have been able to get information with as much ease as they are today. So what is the degree of diligence required on his part before he makes the leap to this company and then relies on these representations? Well I don't think that first of all if he relies upon the representations or says he did that he should be criticized or shamed for that which is what  in the appellee's brief. Does he have some? Yes. What amount and does it tip the obligation of the employer which obligated itself to be honest with him by saying the things that it said to him knowing what he would be giving up? Well I don't think that this doesn't get down to sales puff that this doesn't get down to the... But when they're giving up their career and their life's employment doesn't that in and of itself trigger some kind of diligence or at least some kind of common sense diligence before they make that   don't think that it triggers that diligence but I don't think that it says that you then don't give any credit to or have to independently investigate that which has been represented to you both in writing and verbally based upon again the setting in which the person is  the position and the role that they have  and how they play and what they do and how they don't play and how they do their part you         do their part they are they play their role and how do they play their role and how they play their role their role in different cases where there are indications a crack in the scenes with respect to Kentucky law. This is not trying to sweep that away. I'm trying to get away with respect to the principles because they seem to be so difficult to assert in employment settings. I have one other question for you. It seems to me that Mr. Vogel did not argue before the district court a claim of failure to pay certain benefits. He now argues that the district court opened the  contract as a matter of law. In other words, the order, the April 14, 2011, 2012, or 2013, that order came up after the summary judgment. That didn't exist at the time. The summary judgment was briefed and argued and ruled upon. It later came up that the judge, on his own, discerned that the  judgment action and the counterclaim with respect to the $20,000 signing bonus could be decided as a matter of law. So it wasn't something that was discussed at the summary judgment stage, because this was an order that was subsequently entered by the judge after the summary judgment order was entered. That's not before us, though, right? That $20,000 is not before us? No, no, it's not. Okay. Let me ask this differently. Did you make a claim below that you were entitled to temporary living expenses? Oh, yes. You argued that? Oh, yes. Well, I've never been face-to-face before the court, but it was briefed, yes. The $20,000 signing bonus, the vacation, the holidays and personal days pay, and the living expenses were all argued and briefed as a matter of not just the contract law, but also as a part of the statutory wage claim that was brought in in count two. I don't know if that's what you were asking. Yes. Is that what you were asking, Judge? Yes. Okay. Thank you. May it please the Court, I'm Marisha Kamer on behalf of the Appley E.D. Bullard Company. I do agree with Your Honor that it's been a very unpleasant situation for both sides, but the decision to have Why doesn't Carlozzi the plaintiff was guaranteed employment for as long as he wished to remain. The decision to hire Mr. Vogel was not undertaken lightly. Certainly his decision to come to Minnesota was not something that took long thought on his part. He came to Kentucky three times to interview over the course of two months. He met with multiple members of Bullard's management team, including Mr. Miller, who at the time was the CEO. He has now since stepped down. Mr. Pasch, who is the current CEO, and Jed Bullard, who is the chairman of the board. I think we all know in the business world that  euphemism for a relationship that didn't work out. Mr. Vogel also has a problem with the fact that we circulated a memo after he left that he was leaving to explore other opportunities and it wasn't a fit. Did he want us to circulate a memo that said he didn't perform correctly, Your Honor? Well, the fact about that was that she was fired by the CEO. Mr. Miller, yes, she was fired by Mr. Miller but that just didn't work out for her.  misunderstood, Your Honor. Was the question from Mr. Vogel to Mr. Miller, was she fired? No, I believe the question was what happened to her, why is she no longer here was the question put to Mr. Vogel. Mr. Vogel is a sophisticated businessman. He was being recruited to come to        charge of recruiting people. Mr. Vogel was a sophisticated businessman. He was being recruited to come to the number two position in this country. Mr. Vogel was a sophisticated  He was    recruiting  as a first member of this research commission. Mr. Vogel said he was being recruited to come to charge of  research.    being recruited to charge of this research. He was being recruited to charge of this research. He was being recruited to charge of this research.            being recruited to charge of this research. He was being recruited to charge of this research. He was being  to charge of this case . A short term incentive had to be in the chair when it was paid, had to be there at least six months. The LTI had to be there when it was paid, had to be there at least a year, had to be subject to the domination of the CEO and approval of the board, none of which he met, and they were tied to the employee. Is there in the record here where the CEO came to him or called him in and said this is just not working out and you're not doing a very good job, we're displeased with your work and you've got to do these things in order to be acceptable to us? Anything like that before giving him an opportunity to correct something? Absolutely, starting in February of 2011. And what's that record show? It shows that Mr. Pash called him in on numerous occasions at least as early as February of 2011 and said you're not performing at the level that I expect, I don't know what it is, you need to find a project, make it as your own. He was not supposed to be the second in command? Mr. Rogel was indeed, at that time Mr. Miller had stepped back from the CEO role, Mr. Pash had moved up to the CEO role, so then Mr. Rogel was indeed the second in command as the Vice President of Sales and Marketing. Who was making the decisions here about this? At the end, Mr. Eric Pash, he was the CEO. So he was hired by Mr. Miller, but the other fellow then succeeded him? Correct. Mr. Pash should have a lot of input into Mr. Rogel's hire, even though it was prior to him assuming the CEO role with the company, Your Honor. So there were meetings as early as February of 2011, continuing in June, and then there were at least two in June and then two follow-ups in July to say, You need to pick a project that you can make your own. Show me what you can do with that project. Mr. Rogel picked the company's long-term strategic plan to make his own. He didn't even develop that to the level that Bullard wanted by the time the July 6 meeting rolled around in which he was terminated. But if you're doing a long-term strategic plan, isn't it implicit in that that you need to know something about the business and the industry? And there had been a statement early on that the company thought he would need six to 12 months to sort of learn this, but within the first six weeks or so of the employment, you're holding that person responsible for   He didn't have such a plan at his previous employer and was very good at strategic plans. Mr. Pasch, I believe, did express some reservations about his ability to do that given his tenure with the company and encouraged him to see. Did anyone check on his record at the former company he was working for to see what his reputation was or what they might say about him or any kind of diligence? You're saying that Mr. Vogel should have been diligent. Did this company check on his record there? Absolutely, Your Honor. We hired a professional recruiter. And they found that it was good. Yes. Bullard did not directly interview, but the recruiter did it on their behalf and he did come back with good references from the previous employer. And how do you distinguish the Shaw case? This case is different, Your Honor, in the sense that the representations that were made were so general in terms of duration that I don't believe it's appropriate to expand common law employment law in Kentucky using these facts. I'm not saying there aren't other facts. I just don't think these are the facts to do it. Thank you. Well, it's a sad case. I don't know. Maybe the jury ought to decide it. Thank you, Your Honor. I agree. And that was our contention before the district court. There are many facts here and many of the facts don't necessarily fit neatly within the existing law. I've never seen a case like this. It's not to say another one hasn't been out there. When Ms. Kammer talks about that Mr. Vogel told Ms. Kinney didn't work out, that's a different case. I don't know what the agreement was between them. But they can't go just saying somebody was fired, can they? I understand, but if you got into the reasons why, that's not the same thing. The other thing, he learned another director of sales had left Mr. Guglielmi. All he was told was he had left to join a competitor. He left to go to a competitor. In fact, he left because he could not stand Mr. Pash's micromanagement. That is a part of the record. Let me ask you this. How long ago did he get discharged? I'm sorry, Judge? When did he get discharged? He began in January of 2011 and was discharged in early July of 2011. Where is he now? He has been underemployed and unemployed. Back to where he was before? Living. His life has returned to Minnesota but his work takes him in cars. What? His life takes him now in cars around the Midwest. He is like a route fellow. Like a what fellow? A route as opposed to a vice president. He is nowhere near the compensation or the position. It has to do with the 6-12 months. That is in two places. Not just Jed Bullard the chairman of the board. He told Vogel that Vogel would spend 6-12 months assessing and analyzing the company's organization processes, strategies, and staff issues. Mr. Vogel was told by Mr. Miller and Mr. Pash that it would take 6-12 months for Mr. Vogel to get to know the business and that he would need to absorb the business, products,  culture before making any appropriate marketing and sales changes. Did Mr. Miller tell Mr. Pash to fire him? Not to my knowledge, no. There is no record of that. Mr. Miller is supposed to be the man who  Mr. Miller. We don't know that there was  conversation one way or another about that. I think Mr. Pash, Your Honor, is the person to whom most of the concern about micro management, control freak, and so forth has been Mr. Vogel. And the consternation among personnel caused by Mr. Pash, it was described as a dysfunctional environment, a sea of sharks, a micro manager, and a toxic and poisonous culture. Where does that information derive? From the deposition testimony, a part of the record, from Ms. Kinney, the former Vice President of Sales and Marketing before Mr. Vogel, and Mr. Korb, who was the Director of Marketing at the time Mr. Vogel was hired, although Mr. Vogel wasn't told that Mr. Pash intended to fire Mr. Korb when Mr. Korb was fired. Prior to the meeting with Mr. Pash, Mr. Vogel prepared a PowerPoint to use as a part of his presentation, and that Mr. Pash accessed or obtained that prior to the meeting. Is it your allegation that something about that PowerPoint precipitated the termination? Well, I hadn't heard, and I don't think that the record establishes what Ms. Kamer indicated as far as some performance history or performance performance history. There was never a warning issued. There was never a performance evaluation given. Rather, when in late June Mr. Pash talked to Mr. Vogel, and there was discussion between Mr. Pash and Mr. Vogel about whether Mr. Vogel should be there, wanted to be there, and Mr. Vogel said, well, given that you don't really let me do much, and you've kind of cut back on my authorities, I don't know that I'm needed here. So Mr. Pash  well, when we meet again on July 6th, when we meet, put together for me something which was described as what you bring to the table. And what Mr. Vogel then did was he went about a PowerPoint presentation of that. When he got back to the meeting, and the district court noted that that was an untruth, that Mr. Pash had lied to Mr. Vogel about that, as the record includes other indications of Mr. Pash lying about things. But that there was no substantive discussion about what you bring to the table, he came to the meeting to be terminated, and that's what Mr. Pash testified. I'd like to ask one other question. How large a company is this? Does the record reflect the size of this company, sales, and so on? Blurred? No. At the time that Mr. Vogel was there, I think it was $80 or $90 million in sales, which is smaller than the company that Mr. Vogel left, where he was vice president and member of the executive team in his prior employment. $80 or $90 million sales company. That's what I understand as far as revenues. What was the industry of the company that he moved from to come to Bullard? It was a fire and gas detection system in hazardous settings. It was related industries, or basically a similar industry. I think that they may bump up against each other, but this is more safety hats and fire stuff like that as opposed to electronic systems that monitor gas and our flames. Thank you.